## WILLIAMS *vs.* SHERMAN and KNAPP.

By a written agreement, dated November 29, 1862, the defendants agreed to sell to the plaintiff four hundred cords of white pine wood, to be delivered on or about the 1st of May, 1863, and that no part of the delivery should be later than November 1, 1863, the same to be paid for, cash on delivery. The plaintiff agreed to pay for two hundred cords at the rate of $5.25 per cord, and for the other two hundred cords at $5 per cord. About one hundred and fifty-five cords were delivered, under this contract, and payments made therefor to the amount of $788, between August 1 and September 1, 1863, when the defendants refused to deliver any more.

*Held* 1. That the contract was for the delivery of, and payment for, four hundred cords of wood as an entirety, half the quantity being at the higher, and half at the lower price,

2. That the contract was to the effect that the defendants would deliver, on or about May 1, and that no part of the delivery should be later than the 1st of November; the payment to be cash on delivery.

3. That the agreement was not for payment *as* the wood was delivered, but required the full performance of the delivery agreed on, before payment could be demanded,

4. That the contract gave the defendants the whole season, from May 1st to November 1st to deliver the wood; and if it was delivered within that time the plaintiff was bound to accept and pay for it.

5. That it was not the one half, or the other, that was to be paid for at the greatest price; but the prices named covered the whole quantity,

6. That the plaintiff committed no breach of his contract by refusing to pay any more than $5 per cord, because the defendants were not in a condition to demand any thing; nor could such refusal be deemed a refusal to take any wood and pay for any part at the higher rate named in the contract.

7. That the judge erred in holding that the delivery of one hundred and fifty-five cords was too late to be applied on account of the two hundred cords which was to have been delivered on or about May 1st; and also in leaving it to the jury to say whether the delivery was in season, and if not, that the defendants were entitled to be allowed only at the rate of $5 per cord.

8. That the plaintiff having accepted the one hundred and fifty-five cords as a delivery under the contract, the jury should have been instructed, in estimating the damages, to allow the defendants for one half of the wood at the larger price, and the remainder at the lower price.

THIS action was brought upon a contract made by the defendant with the plaintiff, to deliver to him four hundred cords of white pine wood. The contract is as follows :

"NEW YORK, Nov. 29, 1862.

This is to certify that the party of the first part, Sherman & Knapp, have this day agreed to sell John T. Williams, the party of the second part, four hundred cords white pine wood, cut large size, four foot long, sticks not less than three inches up to eight inches, the said wood to be delivered on or about the first of May, 1863. The said John T. Williams agrees to pay for 200 cords at the rate of $5¼ per cord; the other 200 at $5 per cord; the same to be paid for, cash on delivery, and the said wood to be delivered on or before the first of November, 1863; the same wood to be good merchantable wood.                   JOHN T. WILLIAMS,
                                    SHERMAN & KNAPP."

The defendants delivered one hundred and fifty-five cords of wood on this contract, between August 1st and September 1st. Upon these deliveries the plaintiff paid to the defendants $788.37. During the summer the price of white pine wood rose in the market from $7 to about $8 per cord, which was the market price on the 1st of November. The defendants refused to deliver any more wood on the contract, and this action was brought for the non-delivery of the remaining two hundred and forty-five cords. The defense set up was the plaintiff's *neglect* to pay cash for the wood on delivery, and a notice by the plaintiff to the defendants that he would not receive any more wood on the contract.

The jury found for the plaintiff $432.58.

*C. W. Sandford*, for the plaintiff. I. The question as to the performance of the contract was fully and fairly submitted to the jury, and their verdict is conclusive. Whether a sale has been completed is a question of fact for the jury. (*De Ridder* v. *McNight*, 13 *John.* 294.)

II. It is a well settled principle of law, as well as of morals, that a man, when he agrees to sell an article at a specified price, and by a specified time, cannot demand pay until he has fully performed the agreement on his part. (*Champlin*

v. *Rowley,* 18 *Wend.* 187. *Stephens* v. *Beard,* 4 *id.* 604. *Dana* v. *Fiedler,* 1 *E. D. Smith,* 463 ; *affirmed* 2 *Kern.* 40.)

III. The seller's refusal to deliver renders it unnecessary that the buyer should tender the price, in order to entitle himself to sue for damages for non-delivery. (*Dana* v. *Fiedler, supra.*)

IV. The judge gave the true construction of the contract, that two hundred cords of wood were to be delivered on or about the 1st of May, and two hundred cords on or before the 1st of November.

V. The rule of damages, on a breach of special contract for the delivery of merchandise, (where the consideration is not payable before delivery,) is the difference between the market value of the article on the day it should have been delivered and the price which the plaintiff agreed to pay for it. (*Dana* v. *Fiedler,* 1 *E. D. Smith,* 463. *Sedg. on Dam.* 2d ed. p. 260.)

*T. R. Westbrook,* for the defendants. I. The judge erred in deciding that the contract required *two* hundred cords of wood to be delivered on or about the 1st of *May,* and that the wood delivered in consequence of the late period of the delivery could not apply on the first two hundred cords, and was therefore properly paid for at *five* dollars the cord. The learned judge, it will be seen, makes the time of delivery of the essence of the contract, though wood had not fallen in price, between May 1st and the time of actual delivery, and although as Mr. Story, in section 310 of his work on sales, says : "Time is not, however, ordinarily deemed to go to the essence of a contract, unless it is so created by the parties, or unless it naturally follows from the circumstances of the case." 1. This is not the true construction of the contract. The contract does not require *two* hundred cords to be delivered by the 1st of *May* ; if it requires any to be delivered by that time, it requires the entire four hundred to be delivered ; for immediately after speaking of the "four hundred

cords," it says " the said wood to be delivered on or about the 1st of May, 1863." Neither does the other date specified in the contract, " on or before the 1st of November, 1863," refer to the other two hundred cords, but to the entire four hundred. This is evident from the following considerations : The language is, " the same to be paid for cash on delivery, and the said wood to be delivered on or before the first of November, 1863, the same wood to be good merchantable wood." If the terms " same" and " said" refer to the last two hundred cords, and not to the entire four hundred cords, then you have no time of payment specified for the first two hundred cords, and no specification nor restriction as to its quality. But again, it is the " said wood" which is to be delivered on or before the 1st of November, 1863, and not the said two hundred cords. When a contract is an entirety, as this is for a quantity of wood, an expression, the " said wood" would, without words of limitation, refer to the whole ; it is especially so here, because the word. " wood" is nowhere, prior to this clause, used in the contract, except in connection with the four hundred cords, and the antecedent, therefore, to which the word " said" refers, the word " wood," is the entire four hundred cords. The court is also referred to the complaint, from reading which it is manifest that both expressions, to wit, " 1st of May," and 1st of November," are applicable to the entire four hundred cords, and that neither can be referred to only a part of the wood. If then, as we have endeavored to show, the expressions used in the contract " 1st of May, 1863," and " 1st of November, 1863," refer to the entire four hundred cords, then the construction of the judge, which refers the former to the first two hundred cords, and the latter to the remaining two hundred cords, cannot be correct. What then is the true construction of the contract ? To obtain this we must " place ourselves in the situation of the contracting parties whose language we are called upon to ascertain." (*Per Gridley, J. in Hasbrouck* v. *Paddock,* 1 *Barb.* 638.) What was that situa-

tion ? The contract was made November 29, 1862, after navigation closed, and the 1st of May following was about the time when navigation would open. The wood which was to be delivered lay upon the bank of the Delaware and Hudson canal, distant twenty miles from tide water. To give the contract a construction which would require the defendant to haul it with teams that distance would be absurd. · It is clear, then, the parties intended that the delivery of the wood should begin " on or about the 1st of May, 1863," and terminate " on or before the 1st of November, 1863." This construction not only gives the words " May" and " November" force as applicable to the whole four hundred cords, which the contract requires, but gives significance and meaning to the words " on or about" preceding the words " 1st of May," and the words " on or before " preceding the words " the 1st of November." The former being especially applicable to a date fixed for the commencement of the contract, and the latter for its completion. The parties also so construed the contract ; for the first wood, though delivered August 4, 1863, was paid for at five dollars and a quarter per cord, and the letter of the plaintiff of June 27, 1863, reads : " I now notify you, that I am ready to receive the four hundred cords of wood that I contracted for with you last fall, to be delivered *between* the first of May and November." 2. If, as the judge held, the contract as written required two hundred cords to be delivered " on or about the 1st of May, 1863," it was perfectly competent for Williams to extend the time, which he did. (1.) His letter of June 27, 1863, had that effect. By it we were informed that the contract required the " four hundred cords " to be delivered· between the 1st of May and 1st of November," and that if the same were " not forthcoming according to contract," (meaning thereby, of course, according to its terms as claimed by him,) he would hold the defendants responsible. It needs no argument to prove that if one party be required by another to do something in a certain way, such requirement

Williams *v.* Sherman.

amounts to a permission so to do it. And in this case the plaintiff having required us to deliver the whole four hundred cords "between the 1st of May and November" we had that whole period "between" those dates to comply with the contract. (2.) By accepting the wood on the 4th of August, 1863, as a delivery of the first two hundred cords, this point seems to require no elucidation. The principle upon which it depends has been frequently applied to cases of landlord and tenant. Thus, when in consequence of non-payment of rent, the tenant has incurred a forfeiture, a subsequent acceptance of rent by the landlord waives the forfeiture. In *Merrill* v. *The Ithaca and Owego Railroad Company,* (16 *Wend.* 586,) it was applied to the case of a written contract; the court deciding that "when work done under a special contract is not completed within the time limited for its performance, but is progressed in after the day with the assent of the party for whom the work is done, a recovery may be had ＊ ＊ ＊ according to the rate of compensation fixed by the contract." And the remark which Judge Cowen makes on page, 589, to wit: "If one party by his conduct or silence leads another to believe that he is at work for him on certain wages, he is estopped and shall not add to his demand," is applicable here. If Williams meant to insist that we were too late to deliver the two hundred cords, he should have told us so; by not telling us this, but on the contrary by accepting our cargo, and thus leading us to suppose that we could still deliver it "at certain wages" (prices) "he is estopped" from setting up that the wood subsequently delivered was not to be paid for at those prices.

II. The judge was equally wrong in the second reason which he gave for refusing to nonsuit, and which error was repeated in his charge in these words: "I say to you without hesitation, upon the face of this contract, that it was obligatory on the defendants to deliver the whole quantity of 200 cords, on or about the 1st of May, before they could demand of the plaintiff pay for any part of it." 1. The plaintiff had

declared upon no such contract. The complaint set out one which required payment for each lot as delivered. At folio 4 in complaint the various lots delivered are set out, and this language is used: "Amounting in all to 155 cords of wood, for which said defendants were paid according to said contract by said plaintiff." Thus clearly recognizing the obligation to pay for the various lots as delivered. 2. Neither is the proposition sound on the merits. The contract called for "cash on delivery," *i. e.* as fast as delivered. In *Gardner* v. *Clark*, (21 *N. Y. Rep.* 400,) which was an action "for damages from the non-performance of a contract to sell and deliver a thousand bushels of barley at forty-four cents per bushel    *    *    *    to be paid for as fast as it should be delivered," the court held that the barley should be paid for as each load was delivered. If the construction of the language is doubtful, the conduct of the parties under it may be referred to in aid of the construction. The defendants claimed, and this claim the plaintiffs conceded, that each load should be paid for as delivered. Upon this point there was no dispute, and the quarrel was only as to the amount to be paid. 3. But the point is of no consequence, as the plaintiff told us both by action and words that he would only pay five dollars the cord for the last two loads. We had a right to take the plaintiff at his word. If he informed us that he would pay a quarter of a dollar less per cord than the contract required, such information was a notice to us that he would not comply with the contract, and we had the right to terminate it.

III. It follows from the preceding propositions that the plaintiff should have been nonsuited. This proposition needs no argument. Assuming that the wood delivered was applicable upon the first two hundred cords, it was to be paid for at five dollars *and a quarter* per cord, and a refusal to do so was a violation of the contract by the plaintiff, which exonerated the defendants from a performance thereof. There can be no question that the first two hundred cords were to

Williams *v.* Sherman.

be paid for at five dollars and a quarter per cord. The contract, after making provision for the payment for "200 cords" at that price, says, "the other 200, $5 per cord." That "200 cords" which is to be paid for at $5¼, is not only mentioned first in the agreement, but the remaining 200 cords is designated as the "other." In common parlance (and thus contracts are to be construed) that which is called the "other" is second.

IV. A very grave question also arises upon the whole case, growing out of the absence of any place named in the contract as the place of delivery of the wood. It was assumed on the trial that the defendants were bound to deliver the wood in New York city. The contract does not say so. "In a contract of sale, if no place of delivery be agreed upon, the articles sold must be delivered at the place where they are at the time of sale ; unless some other place is required by the nature of the articles ; or by the usage of trade ; or the previous course of dealing between the parties ; or is to be inferred from the general circumstances of the case." (*Story on Sales,* § 308.) No fact is shown upon the trial to regulate the delivery, except the conduct of the parties under it. And if this conduct points out the place of delivery, we respectfully submit it points out the time of it also, and likewise the manner of payment.

*By the Court,* LEONARD, J. The exceptions taken at the trial were ordered by the judge to he heard at the general term in the first instance, and proceedings were stayed in the meantime. The case now comes before the court on these exceptions.

The action is to recover damages for the non-delivery of wood sold by the defendants to the plaintiff under a written contract. The material parts of the contract, affecting the questions raised in the case, are to this effect :

Sherman & Knapp agree to sell to John T. Williams 400 cords of white pine wood to be delivered on or about the first

of May, 1863. Williams agrees to pay for 200 cords at the rate of $5.25 per cord ; the other 200 cords at $5 per cord, cash on delivery ; the wood to be delivered on or before the first of November, 1863. This contract was signed by the parties, and bears date November 29, 1862. No question was made about the place of delivery, although none was named in the contract. About 155 cords were delivered under this contract, and payments were made therefor to the amount of $788.

The delivery of wood and the payments were made between August 1 and September 1, 1863. The deliveries made were in three nearly equal parcels, from vessels at the wharf in New York city.

The judge held that the defendants undertook to deliver 200 cords about May 1, 1863, to be paid for when that amount should be so delivered, at $5.25 per cord, and the other 200 cords were to be delivered about November 1, to be paid for when it was all delivered.

The defendants' counsel requested the judge to charge " that the plaintiff having on the reception of each cargo undertaken to pay the money, and the complaint alleging that the plaintiff paid according to the contract, the plaintiff cannot now say that he was not bound to pay for any wood until 200 cords were delivered."

The judge also held that the delivery of wood was too late to be applied on account of the 200 cords which the defendants agreed to deliver on or about the first of May, but he left it to the jury to say whether the delivery was in season for that purpose, and if not, that the defendants were entitled to be allowed for the wood delivered only at the rate of five dollars per cord. He also held that it was obligatory on the defendants to deliver the whole quantity of 200 cords, on or about May first, before they could demand pay for any part of it.

The defendants excepted to these rulings of the judge, and the questions so raised were argued at the general term.

The contract appears to be for the delivery of, and payment for, 400 cords of wood as an entirety. Half the quantity was to be paid for at the higher, and half at the lower price. The defendants agreed to deliver it all on or about May 1st; but the other clause in relation to the delivery qualifies the former, and extends the time to the first of November. The contract is to the effect that the defendants will deliver on or about May 1st, and no part of the delivery shall be later than the first of November. The payment is to be "cash on delivery." The agreement is not for payment *as* the wood is delivered, but requires the full performance of the delivery agreed on, before payment can be demanded. The contract gave the defendants the whole season, from May 1st to November 1st, to deliver the wood, and if it was delivered within that time, the plaintiff was bound to accept and pay for it.

The defendants resided in Ulster county; the deliveries were by cargo from that county to the plaintiff at New York. The action of the parties indicates that the wood was expected to be delivered through the season of navigation. If any had been delivered within a reasonable time before the first of May, the plaintiff was required by his contract to pay for it. I am unable to perceive that it was the one half or the other, that was to be paid for at the greatest price. The prices named covered the whole quantity.

The direction that the defendants were only entitled to payment after the delivery of 200 cords, was not unfavorable to the defendants, inasmuch as they were not entitled to any payment till after the delivery of the whole 400 cords. Then the full price of $5.25 for half and $5 for the other half, per cord, was due, in case it was all delivered before November 1st, 1863.

The plaintiff committed no breach of his contract by refusing to pay any more than $5 per cord, because the defendants were not in a condition to demand any thing. Nor can this refusal be considered, as the defendants insist, a refusal

The judge was in error in holding that the delivery of 155 cords was too late to be applied on account of the 200 cords which was to have been delivered on or about May 1st, and also in leaving it to the jury to say whether the delivery was in season, and if not, that the defendants were entitled to be allowed only at the rate of five dollars per cord. The plaintiff accepted the 155 cords as a delivery under the contract, and in estimating the damages the jury should have been instructed to allow the defendants for one half of the wood at the larger price, and the remainder at the other price. This error may have affected the amount of damages, and the defendants are for that reason entitled to a new trial, with costs to abide the event.

[NEW YORK GENERAL TERM, April 1, 1867. *Leonard, Ingraham* and *Sutherland,* Justices.]